IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00171-D

| | |
|---|---|
| **Thomas R. Hill,**<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**Carolyn Colvin**, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | **Memorandum & Recommendation** |

　　　　Plaintiff Thomas R. Hill instituted this action on August 22, 2014 to challenge the denial of his application for social security income. Hill claims that Administrative Law Judge Richard L. Vogel erred in failing to consider whether his impairment meets a Listing impairment and in failing to properly consider the opinion evidence from Dr. Martin Riss. Hill also maintains that ALJ Vogel improperly evaluated his credibility. Both Hill and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 19.

　　　　After reviewing the parties' arguments, the court has determined that ALJ Vogel reached the appropriate decision. Hill has failed to produce evidence that his impairments meet all of the criteria of Listing 1.04A. Additionally, there is substantial evidence to support ALJ Vogel's consideration of Dr. Riss's opinion and his evaluation of Hill's credibility. Therefore the undersigned magistrate judge recommends[1] that Hill's Motion for Judgment on the Pleadings be

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

I.  **Background**

On June 23, 2012, Hill filed applications for supplemental security income and disability insurance benefits on the basis of a disability that allegedly began on June 16, 2012. After his claims were denied at both the initial stage and upon reconsideration, Hill appeared before ALJ Vogel for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Vogel determined that Hill was not entitled to benefits because he was not disabled. Tr. at 16–24.

In his decision, ALJ Vogel found that Hill had the following severe impairments: diabetes mellitus and chronic back pain. *Id*. at 19. ALJ Vogel also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Vogel determined that Hill had the Residual Functional Capacity ("RFC") to perform a full range of sedentary work. *Id.* at 20. ALJ Vogel also concluded that Hill was incapable of performing any past work but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing, as directed by Medical-Vocational Grid Rule 201.24. *Id.* at 22–23. Thus, ALJ Vogel found that Hill was not disabled. *Id*. at 71. After unsuccessfully seeking review by the Appeals Council, Hill commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on August 22, 2014. D.E. 5.

II.  **Analysis**

  A.  **Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative

record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

B.     **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

### C. Listing 1.04

Hill first argues that ALJ Vogel erred by failing to find that his impairments met Listing 1.04A. The Commissioner contends that ALJ Vogel properly concluded that Hill failed to meet this Listing because he did not meet all the necessary criteria. For the reasons below, the court determines that the ALJ correctly determined that Hill did not produce evidence to satisfy several elements of Listing 1.04A.

The Listings describe impairments, organized into sections corresponding to major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). If a claimant's impairments meet a Listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Social Security Ruling ("S.S.R.") 83–19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a Listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the Listing criteria, it can still be deemed to satisfy the Listing and establish the claimant as disabled if the impairment medically equivalent to the criteria. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(5), 416.920(d), 416 .925(c)(5). A claimant cannot establish medical equivalence simply "by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. Instead, to establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for the Listing the claimant relies upon. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria).

4

The relevant Listing, 1.04, provides:

Listing 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App. I, § 1.04.[2] In his decision, ALJ Vogel stated that he considered whether Hill's degenerative disc disease of the lumbar spine met or equaled the requirements of Listing 1.04. Tr. at 19. After citing the Listing criteria, ALJ Vogel noted that a lumbar spine x-ray revealed minimal spondylosis and mild degenerative disc disease at L3-4 and L5-S1 and that there was no indication of compromise of a nerve root or the spinal cord. *Id.* Thus, he concluded, Hill failed to meet Listing 1.04. *Id.*

In support of the argument that he meets or equals Listing 1.04, Hill points to medical evidence in the record. An April 8, 2011 MRI of the lumbar spine showed disc herniation at L4-5 with an annular tear which impinged upon the thecal sac and nerve roots with facet joint hypertrophy and moderate canal narrowing. *Id.* at 543. A subsequent MRI in February 2014 demonstrated degenerative changes at L4-5 and L5-S1 with disc herniations impinging upon the nerve roots. *Id.* at 678. Hill contends that the medical evidence also shows diminished reflexes and sensation (*id.* at 545); positive straight leg raises (*id.* at 584); decreased range of motion of the thoracolumbar spine and hips (*id.* at 611); and pain (*id.* at 632).

---

[2] Listing 1.04 also has additional subsections B and C, which are not at issue herein.

The Commissioner notes that Hill has not carried his burden of demonstrating that he meets all the criteria of Listing 1.04A. Despite the evidence Hill identifies in the record, he has not shown nerve root compression characterized by neuro-anatomic distribution of pain or motor loss such as atrophy or muscle weakness. The Commissioner further asserts that, after Hill's alleged onset date of disability, the only physician to consider the issue, Dr. David Zub, concluded that neuro-anatomic distribution of pain was not present on examination or testing. Tr. at 683. Additionally, other medical evidence of record demonstrates that, after the alleged onset date, all treating and consulting physicians found grossly normal reflexes and sensory examinations *Id.* at 610, 643, 683. Further, Dr. Riss' findings of diminished reflexes and sensation on January 2, 2012 pertain to a period prior to Hill's alleged onset date of June 16, 2012. *Id.* at 545.

In sum, Hill has not carried his burden at step three by demonstrating he has satisfied all the requirements of Listing 1.04A so as to be found disabled at that step. Therefore, ALJ Vogel did not err in concluding that Hill did not meet or equal this Listing. There being no error, this issue does not warrant remand.

D. **Dr. Riss's opinion**

Hill next contends that ALJ Vogel erred in evaluation Dr. Riss's opinions. The Commissioner submits that ALJ Vogel properly considered the opinions from this provider. For the reasons below, the court determines that substantial evidence supports the ALJ's decision to accord Dr. Riss's opinions little weight.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1).

Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 16 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05–CV–46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. S.S.R. 96–2p, 1996 WL374188, at *5 (July 2, 1996); SSR 96–6p, 1996 WL 374180, at *1 (July 2, 1996).

As noted above, Hill challenges ALJ Vogel's finding that Dr. Riss's opinions were entitled to little weight. Hill points to two examinations by Dr. Riss: a March 28, 2011 visit and a

7

January 2, 2012 visit. The records note that Hill reported back pain. Tr. at 542–46. An MRI of the lumbar spine showed disc herniation at L4-5 with annular tear which impinged upon the thecal sac and nerve roots with facet joint hypertrophy and moderate canal narrowing. *Id.* at 543. Thereafter, Hill underwent a caudal epidural steroid injection on June 3, 2011. *Id.* at 544. Dr. Riss's 2012 examination found spasms, diminished reflexes and sensation, and positive straight leg raises. *Id.* at 545. Dr. Riss opined that Hill was totally disabled from an orthopedic standpoint, with no expectation of medical improvement. *Id.* at 546.

ALJ Vogel concluded that Dr. Riss's finding that Hill was totally disabled deserved little weight as it was inconsistent with the record as a whole and offered an opinion on the ultimate issue, which is reserved to the Commissioner. *Id.* at 22. The Commissioner argues, correctly, that substantial evidence supports ALJ Vogel's findings as to the weight afforded to Dr. Riss's opinions. First, the evidence contained records from only two instances where Dr. Riss treated Hill.[3] Thus, it is arguably questionable whether Dr. Riss can be considered a treating physician for purposes of § 1527(d) factors. Additionally, Dr. Riss's examinations and reports predate Hill's June 16, 2012 alleged onset date.

Nonetheless, even considering Dr. Riss as a treating physician, his opinion is not entitled to controlling weight inasmuch as it is inconsistent with the other substantial evidence in the record. While Dr. Riss concluded that Hill was totally disabled, he offered no specific functional limitations assigned to Hill. Being unsupported, it is therefore deserving of little, if any, weight. 20 C.F.R. § 404.1527(c)(2). Additionally, Dr. Riss opined that Hill was disabled since 2008, when he suffered a work-related accident. *Id.* at 546. Despite this finding, however, Hill was able

---

[3] Dr. Riss's report references another report dated January 27, 2009, (Tr. at 543), but this is neither part of the record nor applicable to the relevant time period at issue before ALJ Vogel.

to work on a garbage truck, which involved lifting more than 100 pounds at a time, until 2010. *Id.* at 206.[4]

Given these inconsistencies, Hill has failed to demonstrate that ALJ Vogel erred in considering Dr. Riss's opinion. As there is substantial evidence to support ALJ Vogel's finding that Dr. Riss's opinion is entitled to little weight, this issue does not present a basis for remand.

E.   **Credibility**

Hill next maintains that ALJ Vogel incorrectly assessed his credibility. The Commissioner argues that there is not error on this issue. The court determines that the ALJ had substantial evidence to support his decision regarding Hill's credibility.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593–96; 20 C.F.R. § 404.1529(a)-(c); SSR 96–7p, 1996 WL 374186, at *1 n.1; 2 (July 2, 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause his alleged symptoms. SSR 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." SSR 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12-cv-1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28,

---

[4] Dr. Ramesh Raju, Hill's treating physician, opined in October 2012 that Hill had no limits on standing, walking, or siting and that he could lift and carry up to 40 pounds. State agency medical consultants opined that Hill was capable of light work. While ALJ Vogel gave these opinions little weight, finding that they exceeded Hill's RFC abilities, they nonetheless contradict Dr. Riss's opinion that Hill was totally disabled.

9

Case 7:14-cv-00171-D   Document 22   Filed 08/10/15   Page 9 of 14

2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Although ALJ Vogel found that Hill's symptoms limited his functioning to a mild degree, he did not find Hill's argument that he was so limited that he could not engage in substantial gainful activity to be credible. Tr. at 20. Hill argues that ALJ Vogel based his credibility determination on his non-compliance with his medication and on the scope of his reported activities of daily living.

As ALJ Vogel observed, the medical evidence of record shows several instances where Hill was noted to be non-compliant with his diabetes medication. He noted that records from Ocean Health Initiative and Dr. Clark Pritts noted that Hill was not regularly checking his blood sugar levels and that his diabetes mellitus was uncontrolled. *Id.* at 21. Additionally, Hill reported to Dr. Feras Tanta that he could not afford to take his medication. *Id.* at 608.

Under Social Security Ruling ("S.S.R.") 96-7p, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to . . . pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits[.]" S.S.R. 96–7p, 1996 WL 374186, at *8. The inability to afford medical treatment is a sufficient reason for medication noncompliance. *Id.*, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds). However, non-complaince is a factor which the ALJ may consider in

evaluating credibility. *Dunn v. Colvin*, No. 14-1565, --- F. App'x ----, 2015 WL 3451568, at *11–12 (4th Cir. June 1, 2015). Additionally, under 20 C.F.R. § 404.1530:

> to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.... If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.... We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment.

20 C.F.R. § 404.1530.

Here, ALJ Vogel's credibility assessment referenced medical noncompliance but did not solely rely on medical noncompliance to deny benefits, and thus did not violate 20 C.F.R. § 404.1530. *See, e.g., Holbrook v. Colvin*, 521 F. App'x 658, 663 n.5 (10th Cir. 2013) (unpublished); *Bryan v. Halter*, 252 F.3d 1357, 2001 WL 422878, at *2 n.11 (5th Cir. Apr. 5, 2001) (unpublished table decision); *Quails v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000). ALJ Vogel's decision pointed out that the medical evidence included largely normal exam findings, including full strength, no swelling, normal reflexes, and sensory findings. Further, Hill reported to Ocean Health Initiative that although his diabetes was poorly controlled and he did not take his medications regularly, he did not feel tired or poor. Tr. at 613. Moreover, despite his claims that he could not afford medications, the medical records note Hill is a smoker. A claimant's use of income to purchase cigarettes can undercut his allegations that he is unable to afford treatment. *See Hooker v. Astrue*, No. 5:11-CV-243, 2012 WL 7805502 (E.D.N.C. June 28, 2012) (upholding ALJ's credibility analysis which relied, in part, on claimant's failure to take advantage of free medical services and his purchasing of cigarettes and alcohol in finding claimant less than fully credible); *Magwood v. Astrue*, No. 6:10-2936-MBS-KFM, 2011 WL 6257159 (D.S.C. Nov. 21, 2011) (noting that the ALJ considered the plaintiff's claim that he

11

Case 7:14-cv-00171-D   Document 22   Filed 08/10/15   Page 11 of 14

could not afford treatment, but found the claim was not credible because the plaintiff earned money running errands and was able to buy cigars and alcohol); *Roten v. Astrue*, No. 5:08-CV-089, 2011 WL 4596148, at *6 (W.D.N.C. Mar. 31, 2011), *adopted*, 2011 WL 4596129 (W.D.N.C., Sept. 30, 2011) (finding ALJ's credibility analysis supported by substantial evidence, which included the observation that claimant "spent money on cigarettes" and the lack of evidence that claimant "took advantage of free clinic assistance or low cost treatment services"); *Blankenship v. Astrue*, No. 5:07–685, 2009 WL 899426, at *8 (S.D. W. Va. Mar. 30, 2009) (finding the ALJ's credibility discussion, including claimant's ability "to afford a nicotine habit at a pack of cigarettes per day" despite his alleged inability to afford medication, as a factor weighing against claimant's credibility); *Mayle v. Astrue*, No. 9:06–3048–CMC–GCK, 2007 WL 4285383, at *21 (D.S.C. Dec. 3, 2007) (finding ALJ properly considered claimant's purchase of cigarettes and alcohol when considering claimant's credibility regarding asserted inability to afford treatment).

Additionally, Hill reported that his daily activities included driving short distances, microwaving meals, taking care of his pets, going shopping and taking care of his personal hygiene. Tr. at 20, 22. This contradicts Hill's argument that ALJ Vogel did not cite to activities of daily living upon which he based the credibility assessment.

"[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984). An ALJ's credibility determination therefore "should be accepted by the reviewing court absent exceptional circumstances." *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. Air Products & Chemicals, Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*,

12

No. 5:11–CV–63, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were neither unreasonable nor contradicted by other findings). As there is substantial evidence to support ALJ Vogel's credibility determination, which is entitled to great deference, Hill's argument on this issue lacks merit.

**III. Conclusion**

For the forgoing reasons, the court recommends that Hill's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure**

**to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 10, 2015.

*Robert T. Numbers II*
_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE